United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 29, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-11343

_____

In the Matter of: ALL TRAC TRANSPORTATION, INC., Debtor.


ALL TRAC TRANSPORTATION, INC.,

Appellant,

versus

TRANSPORTATION ALLIANCE BANK,

Appellee.

---

On Appeal from the United States District Court
for the Northern District of Texas - Dallas Division
Docket No. 3:04-CV-1759

---

Before JONES, Chief Judge, and SMITH and STEWART, Circuit Judges.

EDITH H. JONES, Chief Judge:*

Appellant All Trac Transportation, Inc. ("All Trac"), a

Chapter 11 debtor, appeals the district court's judgment affirming

the bankruptcy court's rulings with respect to damages and the

dismissal of claims against Transportation Alliance Bank ("TAB")

for numerous violations of the automatic stay.   Although the

outcome is disturbing given the gravity of TAB's automatic stay

violations and the minimal damages awarded, the district court did

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this
opinion should not be published and is not precedent except under the limited
circumstances set forth in 5TH CIR. R. 47.5.4.

not err in upholding the bankruptcy court's rulings. Because both of the lower courts devoted close attention to All Trac's issues and wrote comprehensively on them, we need not repeat their work in order to AFFIRM.

## I. BACKGROUND

All Trac, a long-haul trucking company, filed for Chapter 11 protection on August 13, 2002. At the time, TAB was All Trac's bank. Through its agent, TAB provided a pre-approved line of credit, a demand account that All Trac used as a checking account, and a reserve account. Additionally, TAB was All Trac's factor, purchasing its accounts receivable.

On August 15, 2002, after All Trac filed for bankruptcy, TAB sent 528 letters to All Trac's customers advising them that all payments owed to All Trac should be paid to TAB, regardless of contrary instructions from All Trac, and that a failure to do so could result in civil liability. The relationship between All Trac and TAB deteriorated, and on September 6, 2002, All Trac sought the bankruptcy court's permission to terminate its relationship with TAB and enter into a post-petition factoring and security agreement with Allied Capital Partners, L.P. ("Allied"). The court approved. Shortly thereafter, on September 19, TAB sent another round of letters to All Trac's customers, again instructing them to make all payments to TAB and warning of potential liability if they did not. Additionally, on September 18 and 27, TAB bounced several of All

2

Trac's checks, although TAB held sufficient funds to cover the checks.

On September 23, All Trac filed an adversary proceeding and applied for a temporary restraining order against TAB. On October 1, the bankruptcy court entered an agreed order that adopted several stipulations by All Trac, TAB, and Allied, terminating the banking relationship between All Trac and TAB, and directing that customers' future payments be made directly to Allied.

Months later, All Trac amended its complaint to include (1) a motion to hold TAB in contempt of court for numerous violations of the automatic stay and (2) a claim for tortious interference with contracts between All Trac and its customers, employees, Allied, and other secured creditors. All Trac contended that TAB improperly withheld its accounts receivable, depriving it of funds it needed to make adequate protection payments to secured creditors; when it could not make those payments, All Trac faced the foreclosure or sale of all its trucks and went out of business.

The bankruptcy court tried the adversary proceeding and contempt motion together and, following a lengthy bench trial, concluded that TAB indeed violated the automatic stay and court orders numerous times and tortiously interfered with All Trac's contractual relationships with Allied and All Trac's customers. The court rejected several of All Trac's other allegations of automatic stay violations, its contempt claims, and other tortious

interference with contract claims. It did not address All Trac's claims for tortious interference with business relations and prospective business relations.

The court determined that All Trac had not proven TAB responsible for the destruction of All Trac's entire business, and thus was not entitled to lost profits for the cessation of operations. Since All Trac did not itemize damages from the specific automatic stay violations, it had failed to prove damages aside from the $5,698.80 surcharge Allied imposed after TAB violated a court order, and the court limited damages to that amount. The court also awarded All Trac $68,552 in attorneys' fees plus out-of-pocket expenses and prejudgment interest.

All Trac appealed to the district court, contending that (1) the bankruptcy court erred by failing to properly address its tortious interference claims; (2) it proved that TAB caused the destruction of All Trac's business; (3) it met its burden of proof as to lost profits; (4) the attorneys' fee award was inadequate; (5) the bankruptcy court erred in finding TAB did not act with malice; (6) TAB committed violations of the automatic stay beyond those found by the bankruptcy court; and (7) the bankruptcy court erred in finding some of TAB's actions justified. The district court affirmed on all counts, and All Trac now appeals.

## II. DISCUSSION

This court reviews the district court's decision on appeal from the bankruptcy court by applying the same standards as the district court. Total Minatome Corp. v. Jack/Wade Drilling, Inc., 258 F.3d 385, 387 (5th Cir. 2001). We review conclusions of law de novo and findings of fact only for clear error. Id. Under the clearly erroneous standard, we will "defer to a bankruptcy court's factual findings unless, after reviewing all of the evidence, 'we are left with a firm and definite conviction that the bankruptcy court made a mistake.'" In re Cahill, 428 F.3d 536, 542 (5th Cir. 2005) (quoting In re Bradley, 960 F.2d 502, 507 (5th Cir. 1992) (internal quotation marks omitted)). The bankruptcy court's unique ability to evaluate the witnesses and consider all the evidence in context must be respected. Gen. Elec. Capital Corp. v. Acosta, 406 F.3d 367, 373 (5th Cir. 2005). If the factfinder's view of the evidence is plausible in light of the record as a whole, the appellate court may not reverse it. Sequa Corp. v. Christopher, 28 F.3d 512, 514-15 (5th Cir. 1994).

## A.    Destruction of Business

All Trac first contends that it proved TAB caused the demise of its trucking business by wrongfully withholding the proceeds of its accounts receivable, thereby leaving All Trac unable to make adequate protection payments to its secured creditors. It argues that the bankruptcy court erred in making several factual and legal conclusions and in using a hypothetical

5

analysis to determine what would have happened if TAB had not withheld the proceeds.

Although All Trac contends it raises a legal question, the bankruptcy court made a fact finding about All Trac's failure of proof that this court reviews for clear error. We agree, as All Trac contends, that the bankruptcy judge improperly used a hypothetical to determine what may have happened had All Trac had access to the funds improperly withheld by TAB. This error, however, is harmless, because the court also found that All Trac had not shown how it would have been able to become profitable, in light of its prebankruptcy financial condition, which could not be attributed to TAB. Significant evidence from financial experts supported the finding that All Trac was not financially sound even apart from any actions by TAB. The court further found that All Trac had not shown why, after the relationship with TAB ceased, All Trac still could not pay the costs of its continuing operations. Although All Trac asserted that TAB's actions affected it cumulatively, there was no evidence that any customers limited or stopped doing business with it because of TAB's actions. At most, the company proved that TAB caused the loss of one driver. Thus, even absent the improper hypothetical, the finding that All Trac failed to prove TAB caused the destruction of All Trac's entire business is not clearly erroneous.

**B.    Lost Profits**

All Trac next argues the bankruptcy court erred by failing to award All Trac damages for lost profits resulting from TAB's automatic stay violations. It contends the court erroneously believed All Trac was constrained to provide an "all or nothing" finding on damages, and because the court disbelieved some of All Trac's experts, it improperly denied all lost profits damages. All Trac asserts that because the company offered substantial evidence as to the damages caused by TAB's actions, the court had a duty to calculate the damages, even if it did not accept All Trac's calculations. Again, the record does not support All Trac's claims.

The bankruptcy court found that All Trac failed to prove that TAB's misconduct destroyed its business. This finding was not clearly erroneous. Thus, even assuming the correctness of All Trac's calculation of profits lost when it ceased operations, the company lost profits because it closed down, <u>not</u> because TAB shut it down. Although TAB's numerous violations of the automatic stay undoubtedly damaged All Trac, it failed to connect the violations to identifiable losses, leaving the bankruptcy court unable to award damages for the specific violations. Because All Trac did not make the factual showing necessary to enable a determination of damages attributable to TAB's misconduct, the district court did not err in affirming the denial of damages for lost profits.

C.   **Tortious Interference**

## 1. Appropriate Legal Standard

All Trac next argues that the district court erred by failing to conduct a <u>de novo</u> review of the legal standard applied by the bankruptcy court to its tortious interference claims and that the bankruptcy court applied an improper clear and convincing evidence standard instead of the preponderance of the evidence. There is, however, nothing in the bankruptcy court's opinion discussing or applying the higher standard and nothing to indicate it "imported by reference" a more stringent standard. The district court properly denied this ground for relief.

## 2. Waiver of Claims

All Trac purports to have asserted claims for tortious interference with contract, tortious interference with business relations, and tortious interference with prospective business relations before the bankruptcy court. TAB objected to including any of these claims in the pretrial order, but the bankruptcy court overruled the objection in part, as it stated that All Trac had preserved its claim for tortious interference with contracts in the amended complaint. Ultimately, the court dealt carefully with claims for interference with contracts but it did not address All Trac's business relations claims. The district court held that All Trac waived, as inadequately briefed, its complaint that the bankruptcy court erred by failing to consider the "omitted" claims. <u>See</u> <u>In re Nary</u>, 253 B.R. 752, 762 n.23 (N.D. Tex. 2000).

A careful reading of the record persuades us that All Trac did adequately brief this contention to the district court. That court's oversight is, however, the least of All Trac's problems, because the bankruptcy court correctly limited the issues to interference with contractual relations. The bankruptcy court found that the tortious interference with contracts claims were properly before it because they were contained in paragraphs 44 and 45 of All Trac's March 4, 2003, amended complaint. Contrary to All Trac's position, the amended complaint makes no mention of the business relations claims. All Trac did not litigate those claims in bankruptcy court and may not resurrect them on appeal.

### III.  CONCLUSION

For the foregoing reasons, the judgment of the district court, affirming the bankruptcy court, is AFFIRMED.